### HEARD NOVEMBER TERM, 1875.

### FEATHERSTON *vs.* NORRIS.

An action by the heirs of a decedent to recover from the surety of a late Commissioner in Equity proceeds of land sold by him for partition is an equitable action and properly triable by the Court.

Where an outgoing Commissioner has turned over to his successor a deposit book, regular in form, of a bank in which he was required by law to deposit money officially received by him, wherein the balance to the credit of such Commissioner was more than sufficient to pay the amounts received by him for a certain estate, in an action against the representatives of such Commissioner to recover the moneys received for said estate, such book, in the absence of any evidence contradicting the presumption that the moneys belonged to said estate, is sufficient evidence to relieve the defendants.

An objection that a proper plaintiff has been omitted from the complaint comes too late after a failure to make the objection by demurrer or answer.

### BEFORE COOKE, J., AT ANDERSON, FEBRUARY, 1875.

.This was an action by Ida J. Featherston, Emma E. Young, Helen H. Williams and Ella L. Latimer, plaintiffs, against J. C. C. Featherston, Frances C. McDavid and Ezekiel Norris, defendants.

The plaintiffs are the children and legatees of J. W. Featherston, deceased. The defendant J. C. C. Featherston is a legatee and executor, and the defendant Ezekiel S. Norris is a surety on the official bond of A. O. Norris, deceased, late Commissioner in Equity for the County of Anderson, given in December, 1861.

The object of the action was to recover from the defendant Ezekiel S. Norris a sum of money which A. O. Norris had received as Commissioner in Equity.

The case was as follows:

I. A. O. Norris, late of Anderson County, was Commissioner in Equity for said County prior to December, 1861, and then gave a

new bond as Commissioner for four years, upon which Ezekiel S. Norris was one of the sureties.

II. In 1859, the executors of J. Wesley Featherston had filed a bill in equity, under which the estate was ordered by .the Court to be sold by the Commissioner, and it was sold by A. O. Norris, January, 1860, upon a credit of one, two and three years.

III. In July, 1861, the Chancellor ordered that, " as fast as the proceeds of sale should come into the hands of the Commissioner he should apply the same in payment of outstanding demands against the said estate," &c.; but beyond the payment of debts, no order was made as to the distribution of the proceeds of sale.

IV. The books of the Commissioner show that the bonds were paid as they fell due, and that in 1861, 1862 and 1863, and January, 1864, so much of the fund as was necessary to pay debts was so paid under the aforesaid order of Court. After the payment of debts, there was left in the hands of A. O. Norris the sum of $12,059.42, which there was no order to pay out, and as to which this litigation arises.

V. A. O. Norris remained Commissioner until his successor, W. W. Humphreys, went into office in 1866, when he turned over to .such successor the books and papers of his office, and among them his bank book, purporting to contain evidence that, as Commissioner, he had deposited in the Branch Bank of the State, at Columbia, (as was his duty under the Act of 1840,) the aggregate sum of $63,913.23, which, as alleged, included the funds of the Featherston estate, $12,059.42.

VI. In his final report on estates, June, 1866, sworn to and filed, A. O. Norris also reported that the said money of the Featherston estate ($12,059.42) had been deposited as aforesaid. His successor then took charge of the office and of said bank book, and nothing has been recovered upon the said deposit, the Bank of the State and its branches having ceased to exist.

VII. A. O. Norris died in the Spring of 1873 intestate and insolvent, and in August, 1873, the Featherston legatees, under the will of J. Wesley Featherston, commenced this action on the official bond of 1861, against Ezekiel S. Norris, one of the sureties, alleging that said surety was liable for the official default of A. O. Norris, " who wholly failed to keep and deposit the said money as required by law," which is the only breach assigned in the complaint.

VIII. His Honor Judge Cooke, against objection by defendant, heard the case without a jury, and "adjudged and ordered that the surviving executor of the will of J. Wesley Featherston have leave to enter judgment for the penalty of the bond, and to issue an execution thereon for $12,299.42 and his costs and disbursements, etc. The surviving executor, J. C. C. Featherston, was a defendant in the action and prayed no relief.

IX. From this decision Ezekiel S. Norris appealed, and urged in this Court the following objections:

1st. That the trial was ordered prematurely, before defendant's evidence was taken and without notice of trial or the case being docketed as required by law. ·

2d. That the action on the bond was for money only, and the defendant was entitled to a jury, which was denied him, and the Judge tried the case against his objection.

3d. That a nonsuit should have been granted upon the following grounds:

(*a*) Because the plaintiffs failed to prove the only breach of bond assigned, offering no evidence at all upon the subject of deposit.

(*b*) Because the action was brought upon an official bond without leave to sue.

(*c*) Because the action was not brought in the name of the State, the payee, but by all the legatees united, in their own names.

(*d*) Because the action was brought without any order declaring the right of these parties to the fund or demand for it.

4th. That the appellant, Ezekiel S. Norris, offered affirmative proof that the fund had been deposited according to law, and that, supporting the presumption of law that "he had done his whole duty," the decision should have been in his favor.

5th. That the excess of receipts over payments must have been in Confederate currency, and, in any event, the value of such currency should limit the recovery.

That in any possible view it was error to adjudge the penalty of the bond in favor of one who was a defendant in the case and prayed no affirmative relief.

*McGowan*, with whom was *Whitner*, for appellant, upon the questions whether the action should not have been brought in the name of the State, the payee of the bond, and whether the deposit

book of the Bank of the State of South Carolina contained suffi-
cient evidence to relieve the defendant Norris from liability, sub-
mitted the following points:

The exceptions insist that the Circuit Judge should have granted
a *nonsuit*, and it was error to refuse it.

I. The action was for the penalty of an official bond of a deceased
Commissioner in Equity, against a surety on the bond, and the
action should have been in the name of "the State," the payee and
custodian of the bond.

1. Section 134 of the Code, requiring "actions to be brought in
the name of the real party in interest," does not include actions on
official bonds. "Bonds taken in the name of the people should be
prosecuted in the name of the people and not in the name of the
party in interest."—Waite's Code, p. 126; Voorhies' Code, 97;
*Annel* vs. *Kerr*, 28 How., 324; *People* vs. *Clark*, 21 Barb., 264;
*People* vs. *Norton*, 9 N. Y., 176.

2. This bond was given to a trustee for the benefit of many, like
an administration bond, which must always be brought in the name
of the Judge of Probate.—*Thomas Jordan* vs. *Searle*, 2 Mass., 152;
*Glover* vs. *Heath*, 3 Mass., 252; 4 Mass., 74; *Robbins* vs. *Heywood*,
16 Mass., 524.

3. Before the Code that was the law of South Carolina, for the
good reason that no one could sue for penalty but the payee; and
when *one judgment* was given for the penalty, that stood for the
benefit of all claimants under the bond.—*Treasurer* vs. *Bates*, 2 Bail.,
362; *Treasurer* vs. *Clowney*, 2 McM., 512; *State* vs. *Bird*, 2 Rich., 100.

4. The law of 1866, relied upon, does not touch the point at all.
That was simply a provision that a certified copy should be evi-
dence of the bond. "If any person be aggrieved by the default of
the said District officers, and desire to sue upon the bond, it shall
not be necessary for such person to obtain a certified copy of the
bond from the Treasurer of the State; but such certified copy from
the Clerk of the Court shall be sufficient," &c.—13 Stat., 382.

5. *The law of* 1840 had substantially the same provision in regard
to the copy; but in 1866 the law had been changed making one
State Treasurer instead of two, and it was necessary to make a cor-
responding change as to *who* should give the certified copy. This is
all that Section of Act of 1866 does.—11 Stat., 109.

6. But both those Acts are repealed, and substantially the same
provision is inserted in the General Statutes in these words: "The

bond of any public officer may at all times be sued on by the public, any corporation or private person, for which purpose the officer with whom such bond shall be filed shall deliver a certified copy," &c.—Gen. Stat., 215.

7. But it is said the objection comes too late at the trial, as, under the Code, "objection to parties must be made by demurrer."

This defect is radical and cannot be waived.—Waite's Code, 241; *Burnham* vs. *DeBevorse*, 8 How., 160.

"If the wrong plaintiff sue, or, in other words, if the facts stated in the complaint show no cause of action against the defendant in *favor of the plaintiff*, the defendant may demur under the sixth head. If the objection is not raised by demurrer it may be raised upon the trial and the complaint will be dismissed as to plaintiff in whose favor no cause of action is shown."—1 Waite's Prac., 120; *Palmer* vs. *Davis*, 28 N. Y., 242; *Ritchenberger* vs. *Ritchenberger*, 50 Barb., 50.

II. Although a party, upon payment of the fees, is entitled to a certified copy of the bond, he cannot sue on an official bond without leave granted.

"When a bond is given to the people of this State the action must be in the name of the obligee, and an assignee cannot sue on the bond in his own name unless the assignment is authorized by statute."—Waite's Code, 126; 1 Waite's Prac., 196; *Coachman* vs. *Hunt*, 2 Rich., 452; *Cuddeback* vs. *Kent*, 5 Paige, 92.

III. The nonsuit should have beeen granted *for want of proof.* The only breach charged was "that Norris wholly failed to keep and deposit the sum (money) as is required by law in such cases," and there was absolutely no evidence whatever of the fact charged.

1. What is the law referred to? In the Act of 1840, then of force, it is required as follows:

"The Commissioners in those Districts where no branch of the said bank (of the State) is or may be established shall likewise annually, within one month after their respective Courts, deposit in the said bank, or in some of its branches, all moneys officially in their hands as aforesaid, and which have remained in their hands unclaimed for twelve months; and all moneys shall be deposited by the said Commissioner, not in his private name, but in his official name, and the same shall be transmissible to his successors in office in trust for the said persons or estate. And every Commissioner shall exhibit his bank book containing the entries of all deposits

as aforesaid when required ; but it shall not be necessary to make monthly returns," &c.—11 Statutes, 113.

There is no proof that Norris did not conform to the law. The plaintiff offered no proof whatever upon the subject of depositing, the only breach alleged.

2. The only proof offered by the plaintiff was that Norris received the money (his office book) and then rested, claiming that, having charged Norris with the receipt of the money, it was incumbent on the defendant to discharge him, and that the plaintiff could presume that *he had not deposited it.*

Two things must not be forgotten ; *first,* that this money was received by *Norris officially ;* and, *second,* that he being dead this is an action against *his surety.* If A. O. Norris was sued, proof that he received the money might make it necessary that he should discharge himself, but not so as to *the surety.* As to him the breach must be proved as alleged. It is no breach for a Commissioner to receive money under the order of Court; it must further appear that he did not pay it out *or deposit it,* and until the plaintiff proves that *he did neither* no breach is shown and surety is not liable.

" The breach must be proved as it is alleged."—2 Starkie's Evidence, 344, and authorities.

3. But it is said it is not incumbent on the plaintiff to prove a negative, although he alleges it.

The general rule is that the burden of proof rests on the party pleading the affirmative.—2 Waite's Pr., 117.

" But there are some exceptions, one of which includes these cases, in which the plaintiff *grounds his right of action upon a negative allegation,* and where, of course, the establishment of this negative is an essential element in his case."—1 Greenleaf on Evidence, § 78, and authorities.

" Whenever the law presumes in favor of the affirmative, it lies on the party who denies the fact to prove it, although it may be a negative. For instance, on a note the law presumes consideration ; if the defendant denies that there is any consideration, he must prove it."—2 Waite's Pr., 109 ; 1 Starkie Ev. ; Gilbert's Ev., 148 ; *Willliams* vs. *East India Co.,* 3 East., 192 ; *Munk* vs. *Butler,* 1 Roll, 83 ; *Lord Halifax's case,* Buller N. P., 298.

4. Public officers are presumed to do their duty. " *Omnia presumuntur rite esse acta.*"—Best on Presumptions, 69 ; 3 Starkie, 396 ; Phillips, 151.

As that a Sheriff selling horses *had levied on them*. As that entries made in public books *were made by the proper officer.*—3 Cowan & Hill, note 460, and many authorities.

"When an officer is bound to do a certain .act, the omission of which would be a culpable neglect of duty, the performance of it will be presumed unless the contrary is proved."—*Hartwell* vs. *Root*, 19 John., 345; *March* vs. *Lawrence*, 4 Cowan, 461; *Hickmam* vs. *Calvin*, 14 John., 182.

"Upon an information against Lord Halifax for refusing to deliver up the rolls of the Auditor of the Exchequer, the Court of Exchequer put the plaintiff upon proof of the negative, viz., that *he did not deliver them*, for a person shall be presumed duly to execute his office until the contrary appear."—Buller N. P. 298.

"In a suit for tithes, the defendant pleaded that the plaintiff had *not read* the 39 Articles, and the Court put the defendant to prove it though a negative, for in this case the law will presume that the parson had read the articles, and when the law presumes the affirmative then the negative has to be proved."—*Monk* vs. *Butler*.

It being necessary to prove breach as alleged, it must be proved by the best evidence which the nature of the case will admit.— 3 East., 200.

5. The decision admits the presumption. It says: "This, however, is a bare presumption and only holds as to third parties." (29.) What is meant by third parties? As to the official acts of an officer, is not his surety a third party?

But it is denied that this is a true construction of the law. In the case of the Exchequer roll, Lord Halifax himself was sued. And in the case of the 39 Articles the parson himself sued for tithes.

This is most emphatically a case for the application of the rule. Norris was a public officer. It was his duty under the law to deposit. He is dead and not here to speak, and the bank in which it was his duty to deposit has ceased to exist, and its officers dead or scattered we know not where. It is not a case where the subject matter of a negative averment lies peculiarly within the knowledge of the defendant.

IV. The 12, 13, 14, 15 and 16 exceptions allege error in the decision, finding as matter of fact that the money was not deposited in the Branch Bank of the State, the evidence that it was so deposited being competent and entirely uncontradicted.

1. "Where the Judge finds a material fact *which is wholly without evidence to sustain it,* it is an error of law, and, upon due exception thereto, may be reviewed in the Court of Appeals."—Waite's Code, 517 ; *Webster* vs. *DeWitt,* 36 N. Y., 345 ; 35 Bar., 215 ; *Ball* vs. *Loonis,* 29 N. Y., 412 ; 24 How., 76; *Marrow* vs. *Lord* ; 40 N. Y., 477 ; *Fellows* vs. *Northrop,* 39 N. Y., 119.

"If there is no competent evidence to sustain conclusions of fact arrived at by the Judge, or if the undisputed evidence establishes the contrary, it then becomes a question of law and the Courts are at liberty to examine it."—*Kirkland* vs. *Cureton,* 4 S. C., 122.

The decision of *Byrd* vs. *Small,* (2 S. C., 388,) holding that this Court is " a Court for the correction of errors at law," was a case where the facts were submitted to a jury. Here the Judge, like a Chancellor, decided both law and facts, and there is no remedy unless this Court reviews the case. We insist that the relief sought was not equitable and the Judge should not have heard the case, but, having heard it as an equity case, this Court has the right to review it.—*Kirkland* vs. *Cureton,* 4 S. C., 122.

"It is held that the Supreme Court may review even in a law case if some question of law was involved which influenced the decision of the Judge."—*Byrd* vs. *Small,* 2 S. C., 388 ; 2 *Means* vs. *Foster,* 4 S. C., 249.

2. Here we have in favor of the deposit:

*First.* The presumption of law.

*Second.* No proof contradicting it.

*Third.* The " Reports on Estates " of A. O. Norris, made according to law, and sworn to and filed by order of Chancellor Johnson, 1866, at the first Equity Court held for Anderson after the receipt and deposit of the money. (24.)

*Fourth.* The " bank book " of Norris, bearing the unmistakable marks of a genuine bank book, showing acknowledgment of deposits in Branch Bank of the State at Columbia for $64,813.23. Norris dead, the Bank of the State and its branches no longer in existence and its officers scattered, under the peremptory order for trial we were not able to prove the handwriting of the Cashier. But there is no allegation of forgery, and the book had been turned over to Humphreys, the successor of Norris, and is now in his possession. (23.)

*Fifth.* The perfect agreement of the account of Norris, the bank book and " the report on estates." The latter says : " Balance of

$12,059.42 on deposit in the Branch Bank of the State at Columbia, included in the sum of $63,913." (25.)

The bank book purports to contain evidence of deposits to the precise amount of $63,913. (23.)

3. This was the best proof attainable under the circumstances, not conclusive, but certainly "*prima facie.*" Like the returns of an executor or administrator, good until disproved. No one believes that Norris forged receipts of deposit. The Cashier receipts are not in his handwriting. They are in a business hand in the usual bank book. How did he get the book? Who wrote the receipts? Is not this proof uncontradicted, enough to satisfy any reasonable mind that the book is genuine and that the deposits were made as stated?

4. The argument of this decision is palpable error. It states "if the bank book be competent evidence, it is impossible from these facts taken from it that these deposits were legally made on behalf of the Featherston estate." (30.)

What facts? Look at them: "No money was received for the Featherston estate after January 20, 1864, whilst in 1865 the sum of $2,392.50 was paid out." (30.)

What does that signify? This could not be paid until called for and was then paid under the order of the Court to creditors. That was rightly paid and is not claimed in this suit. But further: "From 30th October, 1863, to January 17, 1864, $64,813.23 were deposited." In this argumentation the decision makes a *mistake of one month.* The date of the deposit, according to the bank book, is *February* 17 and not January. (23.) As it stands, it is precisely right. Received in January, 1864, $7,278.11, and deposited *in February,* 1864, $12,537.43. The deposit manifestly includes the Featherston money as stated in the report. The argument built on the mistake of a month utterly fails!

5. But it is said the deposits were not legally made because not *at precisely the right time.* That the Equity Court, by law, sat at Anderson in July of each year, and that these deposits should have been made "within one month of the adjournment of their respective Courts." That is to say, should have been deposited in the month of *August,* 1864, instead of the October and February previous.

This is error for at least three reasons:

*First.* The words of the Act (1840) *as to time* are not of the essence of the matter, but are declaratory merely. Even if there

had not been an exact compliance to the day, the irregularity would not be fatal unless injury resulted from the variation, which is not pretended.—2 Story S.

*Second.* But Norris was strictly within the law, which only fixed a limit "within which" the money should be deposited. He was not required to deposit until he had the money "unclaimed for twelve months." Within that time he might deposit without regard to the "adjournment of the Court." Norris committed no offense except to *anticipate* the limit. He received in October, 1863, and January, 1864, and deposited immediately February, 1864! This is the head and front of his offending.—See receipts and deposits.

*Third.* If we are to construe the Act so as to limit deposits exclusively to "one month after the adjournment of the Court," there was no necessity for Norris to deposit in 1863, '64 or '65, for in these years no Court of Equity sat for Anderson, and, of course, there could be no "adjournments." But Norris did right not to rely upon any such quibble of words, and, construing the Act according to its sense and purpose, deposited the money soon after it was received.

What was he to do? The money was all due. He was the payee. The Court assumed that the money would be collected—impliedly at least directed it—ordered so much as was necessary to be paid to creditors. What remained was "unclaimed." The Court did not meet to make orders, and, as a good officer, Norris could do no more than deposit it, which he did! It was not his fault that the bank no longer exists. Is it possible that justice can be so twisted as to make his surety pay that money? It surely cannot be.

*Murray,* contra:

An appeal from an order dissolving an injunction does not operate as a *supersedeas* and continue the injunction in force.— *Hoyt* vs. *Carter*, 7 Howard, 140; *Stone* vs. *Carlan*, 3 Code Rep., 103; 1 Van Santvoord's Equity Practice, 374; same, p. 663.

That ignorance of law furnishes no excuse for the breach of a contract or for an omission of duty.—Story's Equity Jurisprudence, § 111, *et seq.*; *Storrs* vs. *Baker*, 6 Johns. Ch. R., 169, 170; *Emmet* vs. *Dewherst*, 8 Eng. L. and Eq. R., 83.

The order of reference in this case to take testimony was granted on the 5th day of November, 1873, and the trial had on the 5th

day of February, 1875, affording ample time to take all the testimony; and if the defendant was taken by surprise, it was his own fault, having been informed that a trial would be insisted on.

A creditor's suit will not lie on the official bond of an officer; sueing creditors come in ratably by an order of consolidation, and to obtain such an order they have no right to hinder or delay another creditor whose case is ready for trial.—*Mitchell* vs. *Laurens*, 7 Rich. Law, 109; *Treasurer* vs. *Bates*, 2 Bailey's Law Reports, 380; 4 Strobhart's Reports, 362.

The cause was considered in open Court as docketed more than twelve months before the trial and an order taken therein and proceeding had upon said order. The law which required notice of trial was a part of the *lex fori* and had been repealed before the trial and no notice was necessary. But even if notice of trial had been necessary, the defendant admitted in open Court that he had received from the plaintiff both verbal and written notices more than fourteen days previous to the meeting of the Court that a trial would be insisted on.—Acts 1873-4, p. 498, § 13.

That the cause was placed on Calendar No. 1 at the instance of the defendant, in opposition to the plaintiff's motion to have it put on No. 2, and, therefore, was ready to be called and disposed of by the Court.

That the consent order of reference in open Court is binding on the parties and was a waiver of the right of trial by jury, if any such exclusive right existed.— *Waterman* vs. *Waterman*, 37 Howard, 41.

Where an action is referable in its nature, and, either by reason of a conflict of proofs or otherwise, it is doubtful whether the examination of a long account is involved or not, a Judge may exercise his discretion in the premises and his order is final and cannot be reviewed on appeal.—Waite's Practice, 328; *Thompson* vs. *Seimer*, 40 Howard's Prac. Rep., 246; *Batchelor* vs. *Albany City Insurance Company*, 6 Abbott, (N. S.,) 240; 37 Howard, 65; same, 399.

The bond of a public officer may be sued on by any person aggrieved by the misconduct of such officer.—Revised Stat., Title 7, Ch, 28, § 11.

The real party in interest the proper one to sue.—Rev. Stat., Title 5, Chap. 122, § 134; 7 Rich. Law, 109.

The right of a party aggrieved to sue on an official bond accrues when there is a breach of the condition of the bond.—*Vaughn et al.* vs. *Evans et al.*, 1 Hill's Chancery, 428.

The Commissioner charged and credited himself in his account with the estate of John W. Featherston, deceased, with the amounts received by him and paid out, showing a balance due said estate of $12,059.42 wholly unaccounted for, which ought to have been deposited in bank to the credit of said estate.—*Pickens* vs. *Dwight,* 4 S. C., 362. His failure so to do is a breach of the condition of his official bond.

The bank book of A. O. Norris, Commissioner, was a private memorandum book and cannot be evidence in his favor.

That if the bank book of A. O. Norris, while in his possession, was not competent evidence in his favor, the receipt of his successor in office for said book could not make it evidence.

The report of A. O. Norris on estates, filed 25th June, 1866, is not evidence in his favor.—5 Rich. Eq., 51. And even if admitted as evidence, is too general and indefinite to establish any deposit in the Featherston estate; and if it did establish a deposit, it does not show, much less prove, that such deposit was in accordance with law.

The law which required Commissioners in Equity to deposit all moneys received officially by them within one month after the adjournment of Court had relation to the term of the Court as fixed by law. The Court, having failed to meet at the required time, stood adjourned to the next regular term, and such adjournment was an adjournment in purview of the Act of 1840.

That J. C. C. Featherston paid to A. O. Norris, Commissioner, on 21st March, 1862, on his bond to the estate of J. W. Featherston, the sum of two hundred dollars, which was not accounted for by said Commissioner, and could not have been deposited by him.

That said Commissioner wholly failed to account for and deposit the sum of thirty-two dollars and forty-eight cents received by him from Wiley Mitchell on account of the Featherston estate.

The breach of the bond complained of is the official misconduct of the Commissioner in not depositing moneys received by him as required by law. The relative value of the currency received does not enter into the case, and the defendant cannot set up the defense that the Commissioner received a worthless or depreciated currency in payment of the bonds.

The parties principally interested in this case are not those who paid their bonds, but minors who have never received anything.

The interests of the defendants in this case are severable in their nature, and judgment may be entered either for or against any one or more, or against some and in favor of others of such defendants, according to the proof upon the trial.—2 Whittaker's Practice, 540.

J. C. C. Featherston is the surviving executor of the will of J. W. Featherston and one of the defendants in this action, and, as the representative of the estate of J. W. Featherston, the proper party to enter up judgment.

April 11, 1876.   The opinion of the Court was delivered

WILLARD, A. J.   The main question is whether there was evidence sufficient in law to support the judgment below.   It was contended that the action is to be regarded as one of law, the proper mode of trial being that by jury, and this Court limited to reviewing errors at law.   The plaintiffs cannot maintain this position, for the judgment which they seek to uphold was given in form in favor of a party made a defendant by them as representing their rights for that purpose.   This fact stamps the right of the plaintiffs with the character of an equitable claim.   It follows that in considering the sufficiency of the ground on which such judgment rests, this Court cannot be excluded from looking into the determinations of fact as well as law.

We think that the Circuit Judge erred, as it regards the nature of the presumptions arising out of the character of the proofs, considered with reference to the nature of the issues, and such error prejudicially affected his conclusions of law and fact.

It appeared that A. O. Norris, now deceased, as Commissioner in Equity, sold real estate belonging to the Featherstone estate, under an order of the Court for partition, and received the proceeds of sale, and made disbursements thereupon from time to time.   It further appears that at the end of his term of office he delivered to his successor in office a book, purporting to be a bank book of the Branch Bank of the State of South Carolina, Columbia, containing what purported to be an account with A. O. Norris, Commissioner in Equity, Anderson District.   That by such account there appeared to be on deposit in that bank a sum of money, more than sufficient to cover the balance, in the Commissioner's hands from

the Featherston estate. Both sides argue that it was the duty of the Commissioner to deposit the moneys claimed in this action in the bank in question. A bank book containing proper credits was the proper evidence of such a deposit, to be delivered by the outgoing Commissioner in Equity to his successor. From this state of facts it is very clear that a presumption arises in favor of the regularity of the proceedings of the Commissioner that must be removed by plaintiffs before they can establish a breach of the official bond in suit.

When a public officer, who is ordinarily presumed to have done his duty, delivers to his successors in office vouchers in the customary form, expressing on their face a compliance with the requirements of his office, while it does not follow that such vouchers may not be impeached, yet it must be assumed that they show a due discharge of official duty until the contrary appears on the part of those alleging against him.

In applying this proposition it will be hardly necessary to say that if the book was other than what it purported to be, or the balance standing to the credit of the Commissioner at the time of the transfer to his successor was not sufficient to cover all the demands against it that would exist, on the assumption that the proceeds of the Featherston estate were included in it, such facts could hardly fail to become disclosed to his successor. It certainly could not be required of one retiring from office to search the records and memory of his successor for evidence to avert suspicion that his official proceedings, correct in form, were false in fact.

After a failure to demur to the complaint or to take such objection by answer, an objection comes too late that a proper plaintiff is improperly omitted from the complaint, nor is that failure to object cured when a cause of action is subsequently established in which the plaintiff has an interest.

The conclusions arrived at render it unnecessary to consider the subordinate questions discussed.

The judgment and conclusions of fact and law must be set aside and the cause remanded for such proceedings as may be rendered proper in order to conform to the foregoing conclusions.

*Moses*, C. J., and *Wright*, A. J., concurred.